E. J. SCHRADER, Petitioner, *v.* THIRD JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, in and for the County of Eureka, and HON. JAMES DYSART, Presiding Judge, Respondents.

No. 3212

November 17, 1937.                    73 P. (2d) 493.

*James T. Boyd, Geo. B. Thatcher* and *Wm. Woodburn,* for Petitioner:

*Hawkins, Mayotte & Hawkins,* Specially Appearing for Respondents:

**OPINION**

By the Court, COLEMAN, C. J.:

This is an original proceeding in certiorari to review an order made by the respondent court in a condemnation suit instituted pursuant to chapter 66, vol. 4, N. C. L. (section 9153 et seq.).

The order sought to be annulled is one authorizing the Roberts Mining & Milling Company to occupy the premises sought to be condemned, pending the action. The order in question was made after notice of the intention to apply for such order was served upon the county clerk of Eureka County, in which the property is situated; the petitioner herein (defendant in said suit) being a resident of Washoe County.

The sole contention made in this proceeding is that the statute (section 9162 N. C. L.) authorizing the serving of such notice in the manner complained of is in violation of the provisions of both the state and federal constitutions guaranteeing due process of law, hence is null and void, and therefore the respondent court acquired no jurisdiction to make it.

Article 1, section 8, of the constitution of Nevada, so far as here material, reads: "No person shall be * * *. deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use without just compensation having been first made, or secured."

Amendment fourteen of the federal constitution provides that: "No State shall * * * deprive any person of * * * property, without due process of law."

We will not incumber this opinion by detailing all of the allegations of the petition, nor all that appears from the record sent up by the respondent court, but only enough will be stated to make clear the situation presented.

It appears that on July 15, 1937, Roberts Mining & Milling Company, a corporation engaged in the working of mining property, commenced an action in the respondent court against petitioner and others, to condemn portions of certain mining claims owned by this petitioner, situated in Eureka County, Nevada; that a copy of the complaint, attached to a copy of the summons in said action, was served upon the petitioners herein on August 2, 1937.

It further appears that on July 15, 1937, the respondent court entered an order shortening the time for hearing of a motion on the part of the plaintiff in said condemnation action, for leave to immediately enter upon, take possession of, and occupy, the property in question pending and until the final determination of said action, and set the hearing for 10 o'clock a. m. on July 21, 1937, and further ordered that said notice of motion be served upon the defendants in said action as provided by statute.

This defendant being a nonresident of Eureka County, the said notice of motion was served upon him by service upon Ed. Delaney, clerk of the said court, as provided in section 9162 N. C. L., which reads: "The plaintiff may move the court or a judge thereof, at any time after the commencement of suit, on notice for such time as the court or judge may direct to the defendant, if he is a resident of the county, or has appeared in the action, otherwise by serving a notice directed to him on the clerk of the court, for an order permitting the plaintiff to occupy the premises sought

to be condemned, pending the action, and to do such work thereon as may be required for the easement sought, according to its nature. The court or a judge thereof shall take proof by affidavit or otherwise, of the value of the premises sought to be condemned and of the damages which will accrue from the condemnation, and of the reasons for requiring a speedy occupation, and shall grant or refuse the motion according to the equity of the case and the relative damages which may accrue to the parties. If the motion is granted, the court or judge shall require the plaintiff to execute and file in court a bond to the defendant, with sureties, to be approved by the court or judge in a penal sum to be fixed by the court or judge, not less than double the value of the premises sought to be condemned and the damages which will ensue from condemnation and occupation, as the same may appear to the court or judge on the hearing, and conditioned to pay the adjudged value of the premises and all damages, in case the property is condemned, and to pay all damages arising from occupation before judgment in case the premises are not condemned, and all costs adjudged to the defendant in the action. The sureties shall justify before the court or judge, after a reasonable notice to the defendant of the time and place of justification. The amounts fixed shall be for the purpose of the motion only, and shall not be admissible in evidence on final hearing. The court or judge may also, pending the action, restrain the defendant from hindering or interfering with the occupation of the premises and the doing thereon of the work required for the easement."

Counsel for petitioner relies upon the following authorities to sustain his contention that the order in question resulted in the taking of petitioner's property without due process of law: California P. R. Co. v. Central P. R. Co., 47 Cal. 528; Davis v. San Lorenzo R. R. Co., 47 Cal. 517; Hettel v. District Court, 30 Nev. 382, 96 P. 1062, 133 Am. St. Rep. 730; Golden v. District Court, 31 Nev.

250, 101 P. 1021; State v. Wildes, 34 Nev. 94–123, 116 P. 595; 20 C. J. 927, sec. 343 et seq.; Lewis' Eminent Domain (2d ed.), secs. 364, 365; Wuchter v. Pizzutti, 276 U. S. 13, 48 S. Ct. 259, 260, 72 L. Ed. 446, 57 A. L. R. 1230.

Before entering upon the consideration of the specific question involved, we think it will be well to consider the power of a sovereign state in the exercise of the right of eminent domain, unhampered by constitutional limitations. This viewpoint is so admirably expressed by Mr. Justice Field in the case of Mississippi & R. R. Boom Co. v. Patterson, 98 U. S. 403, 406, 25 L. Ed. 206, we content ourselves with quoting from it: "The right of eminent domain, that is, the right to take private property for public uses, appertains to every independent government. It requires no constitutional recognition; it is an attribute of sovereignty. The clause found in the Constitutions of the several States providing for just compensation for property taken is a mere limitation upon the exercise of the right. When the use is public, the necessity or expediency of appropriating any particular property is not a subject of judicial cognizance. The property may be appropriated by an act of the legislature, or the power of appropriating it may be delegated to private corporations, to be exercised by them in the execution of works in which the public is interested. But notwithstanding the right is one that appertains to sovereignty, when the sovereign power attaches conditions to its exercise,. the inquiry whether the conditions have been observed is a proper matter for judicial cognizance. If that inquiry take the form of a proceeding before the courts between parties,—the owners of the land on the one side, and the company seeking the appropriation on the other,—there is a controversy which is subject to the ordinary incidents of a civil suit, and its determination derogates in no respect from the sovereignty of the State."

From the above quotation it is seen that the

authority of the state to take private property for public use is plenary, except where restricted by constitutional limitations, and section 4154 N. C. L. provides that mining for gold and other valuable metals is the paramount interest of this state and declared to be a public use, as has often been recognized by this court. Goldfield Consol. M. Co. v. Old Sandstorm, etc., Co., 38 Nev. 426, 427, 150 P. 313.

It will be observed that the statute pursuant to which the notice was served upon the clerk of the court makes no provision for sending it to a defendant in an eminent domain proceeding. It is for this reason that it is contended that the petitioner had no notice of the proceeding, and that the authority last cited controls.

The facts of that case, so far as here material, are that Pizzutti, a resident of New Jersey, was injured by Wuchter, a nonresident, by being struck by an automobile driven by Wuchter while traveling along a highway in New Jersey, and that service of summons was sought to be obtained on Wuchter by serving a copy thereof on the secretary of state of New Jersey, pursuant to the statute of that state. The court in that case states the question involved as follows: "The question made in the present case is whether a statute, making the secretary of state the person to receive the process, must, in order to be valid, contain a provision making it reasonably probable that notice of the service on the secretary will be communicated to the nonresident defendant who is sued. Chapter 232 of the Laws of 1924 [Comp. St. Supp. N. J. 1924, sec. 135–93 et seq.] makes no such requirement and we have not been shown any provision in any applicable law of the state of New Jersey requiring such communication. We think that a law with the effect of this one should make a reasonable provision for such probable communication." Wuchter v. Pizzutti, supra.

The court holds in that case that the New Jersey statute did not afford due process of law.

■ The case mentioned is not in point, because of the

essential difference in the character of the two actions; the one relied upon being to recover a personal judgment in damages against a nonresident defendant by service of summons upon the secretary of state, pursuant to statute; while the action instituted in the respondent court is to condemn real property in pursuance of the eminent domain act. In an eminent domain action in Nevada, summons must be served before there can be a final decree.

The California cases relied upon do not sustain the contention made. Counsel quotes from the opinion in the case first named above. The first paragraph and the first two sentences in the second paragraph cites the second case above named, to support its statement, which statement, in fact, is meaningless, so far as the instant matter and the Davis case are concerned.

From a casual reading of the opinion in the case of Davis v. San Lorenzo R. R. Co., supra, it will appear that it is no authority in the instant matter. The opinion in that case clearly points out that that statute in question in that case made no provision for compensation to the owner where, upon final hearing, condemnation is not ordered. This clearly appears from the following quotation from the opinion: "If the proceeding shall ultimately fail, and the land, for any cause, shall not be taken for public use, no provision whatever is made in the statute for securing to the owner compensation for the use of the land and for waste committed upon it whilst the corporation was in the possession. This omission has been supplied by section 1,254 of the Code of Civil Procedure. But under the Act of 1861, as amended in 1863, the corporation, on giving the bond required by section 34, might enter upon the land, demolish the buildings if there were any, destroy the timber, dig up orchards and vineyards, make excavations and embankments, and in fact might render the land wholly valueless for any other than railroad uses. After this devastation was accomplished, and the owner was despoiled of his estate under the authority of law, the proceeding for

condemnation might utterly fail of its purpose, and the land would not finally be taken for public use, nor subjected to the servitude. In that event, the Court having jurisdiction of the proceeding could award no compensation to the owner; and the bond given by the corporation could afford him no redress, inasmuch as the damages he had suffered would not come within its conditions. We should then have a case in which the law had authorized a private corporation to enter upon the lands of another, demolish his buildings and convert the materials of which they were composed to its own use, and cut down his growing timber or dig the stone from his quarries, and after it was severed from the freehold and had become personal property, use it as it saw fit for the purposes of its incorporation. All this might be done under the authority of law, and in the meantime the owner would be compelled to stand by, with his hands tied and his mouth closed, whilst his personal property was being appropriated by another and his real estate was being devastated and wasted, without a pretense that any security had been given to which he can resort for indemnity. If the land should not be ultimately taken his only remedy would be an action in some form against the corporation. But in the meantime he has been wholly deprived of his personal property when severed from the realty, and his land may have been rendered utterly valueless, and that, too, under the authority of law. If a statute which accomplishes these results is valid, that clause of the constitution which prohibits private property from being taken for public use without just compensation, is an idle and meaningless phrase."

■ If our eminent domain act contemplated no further service of process before a final judgment of condemnation could be entered, and damages pending such final judgment, it is probable that the service complained of would not serve to give the court jurisdiction to enter a final judgment; but summons was regularly

issued in the condemnation proceedings, as in other civil cases, and served upon the petitioner with a copy of the complaint, on August 2, 1937. In fact, section 9162, pursuant to which the order for possession complained of was entered, contemplates that a full hearing shall be had, subsequent to the issuance of such order, for it provides for the giving of a bond by the plaintiff "conditioned to pay the adjudged value of the premises and all damages in case the property is condemned, and to pay all damages arising from occupation before judgment in case the premises are not condemned, and all costs adjudged to the defendant in the action."

The Nevada cases cited by counsel do not aid us in determining the question involved.

The well-established rule, speaking generally, is that if the owner has ample notice of the proceeding, prior to the entry of a binding decree of condemnation, the requirements as to due process are fulfilled.

Lewis on Eminent Domain (3d ed.) at sec. 566, after some consideration of the questions, says: "What then is due process of law? Without attempting to answer this question by a general definition, it is sufficient for the present inquiry to say that all the authorities agree that due process of law requires that a person shall have reasonable notice and a reasonable opportunity to be heard before an impartial tribunal before any binding decree can be passed affecting his right to liberty or property."

It was said by the supreme court of the United States, in Cherokee Nation v. Southern Kansas R. Co., 135 U. S. 641, 10 S. Ct. 965, 972, 34 L. Ed. 295: "Within the meaning of the constitution, the property, although entered upon pending the appeal, is not taken until the compensation is ascertained in some legal mode, and, being paid, the title passes from the owner."

No case has been called to our attention, and we have found none, in which a statute such as ours was considered; and the requirement in our statute for

the giving of notice before property sought to be condemned can be occupied, is a precautionary step, which the statute need not require in condemnation proceedings, as it is the final hearing before judgment which the state and federal constitutions contemplate; hence a compliance with the statutory provision as to the preliminary notice was all that was necessary to authorize the respondent court to make the order complained of.

The supreme court of Kansas, in Buckwalter v. School District, 65 Kan. 603, 70 P. 605, 606, says: "The objection made by the plaintiff in error to them is that no notice of their pendency or progress was given her. This is true. Was notice necessary? It is claimed that private property may not be taken for public use without due process of law and full compensation, and that due process of law requires notice to be given to the party to be affected. This land was taken for a public purpose, and by the exercise of the power of eminent domain. The only provision in our fundamental law limiting the exercise of this power is that contained in section 4 of article 12 of the constitution, which is: 'No right of way shall be appropriated to the use of any corporation, until full compensation therefor be first made in money, or secured by a deposit of money, to the owner.' "

In that case no notice was given, and none was required, except as to the preliminary steps in the condemnation proceeding. The court in that case, to support its conclusions, cites, among other authorities, the case of Fox v. Western Pac. Ry. Co., 31 Cal. 538.

In New York, where the constitutional provision is the same as ours, the Court of Appeals, in People v. Adirondack Ry. Co., 160 N. Y. 225, 54 N. E. 689, 693, asks the question: "Now, what does the phrase, 'due process of law,' mean, when thus applied to the exercise of a sovereign power?" Answering the question, the court said: "The state needs the property, and takes it, and, while the citizen cannot resist, he has the right to insist upon just compensation to be ascertained by

an impartial tribunal. It is a compulsory purchase by public authority, and the individual receives money in the place of the property taken. He has a right to his day in court on the question of compensation, but he has no right to a day in court on the question of appropriation by the state, unless some statute requires it. Matter of Village of Middletown, 82 N. Y. 196, 201. There is no necessity for any safeguard against taking, because the right to take is all there is of the power of eminent domain, and is necessarily conceded to exist when the existence of the power is admitted. Safeguards become necessary only when the question of compensation is reached, and then the courts are careful to see that the owner receives all that he is entitled to. Until then the courts could not help him, unless some statutory right were invaded, as the method of taking is within the exclusive control of the legislature. If a statute requires judgment of condemnation, judgment must be had accordingly before the property can be taken, but otherwise a certificate of condemnation by an executive officer, followed by payment, satisfies every requirement of the Constitution."

There the court was dealing with the question of due process only, and did not have before it a statute such as ours. With us, the statute must, of course, control in the matter of procedure; but when that is complied with, the summons having been served and the defendant given his day in court, he is not denied due process of law.

In Wilson v. Standefer, 184 U. S. 399, 400, 22 S. Ct. 384, 46 L. Ed. 612, it was held that due process of law is afforded a litigant if he have an opportunity to be heard at any time before final judgment is entered.

In the case of McInnes v. McKay, 127 Me. 110, 141 A. 699, 702, the court, in dealing with an attachment proceeding, says: "But, although an attachment may, within the broad meaning of the preceding definition, deprive one of property, yet conditional and temporary

as it is, and part of the legal remedy and procedure by which the property of a debtor may be taken in satisfaction of the debt, if judgment be recovered, we do not think it is the deprivation of property contemplated by the Constitution. And if it be, it is not a deprivation without 'due process of law' for it is a part of a process, which during its proceeding gives notice and opportunity for hearing and judgment of some judicial or other authorized tribunal. The requirements of 'due process of law' and 'law of the land' are satisfied."

In the case of Liberty Cent. Trust Co. v. Greenbrier College for Women (D. C.), 50 F. (2d) 424, 428, it is said: "The due process clause does not guarantee to the citizen of a state any particular form or method of state procedure. Under it he may neither claim a right to trial by jury nor a right of appeal. Its requirements are satisfied if he has reasonable notice and reasonable opportunity to be heard and to present his claim or defense; due regard being had to the nature of the proceeding and the character of the rights which may be affected by it."

The supreme court of the United States, in North Laramie Land Co. v. Hoffman, 268 U. S. 276, 278, 45 S. Ct. 491, 494, 69 L. Ed. 953, says: "In consequence, it has been uniformly held that statutes providing for taxation or condemnation of land may adopt a procedure, summary in character, and that notice of such proceedings may be indirect, provided only that the period of notice of the initiation of proceedings and the method of giving it are reasonably adapted to the nature of the proceedings and their subject-matter, and afford to the property owner reasonable opportunity at some stage of the proceedings to protect his property from an arbitrary or unjust appropriation."

In Commercial Station Post Office et al. v. United States (C. C. A.), 48 F. (2d) 183, 184, it is said: "It is settled that the government may take possession in advance of passing of title or of abandonment of the

condemnation proceeding (Hanson Lumber Co. v. United States, 261 U. S. 581, 587, 43 S. Ct. 442, 67 L. Ed. 809), and that, while payment must be made for the use of the property during such advance possession (Seaboard Air Line Ry. Co. v. U. S., 261 U. S. 299, 305, 43 S. Ct. 354, 67 L. Ed. 664; U. S. v. Rogers, 255 U. S. 163, 169, 41 S. Ct. 281, 65 L. Ed. 566), yet it need not make such payment at the time of taking possession (Seaboard Air Line Case, supra, page 306 of 261 U. S., 43 S. Ct. 354 (67 L. Ed. 664); Cherokee Nation v. Kansas Ry. Co., 135 U. S. 641, 659, 10 S. Ct. 965, 34 L. Ed. 295), but that the owner is sufficiently protected if adequate provision for payment for possession be made at the time of taking possession (Joslin Co. v. Providence, 262 U. S. 668, 677, 43 S. Ct. 684, 67 L. Ed. 1167; Hanson Lumber Co. v. U. S., 261 U. S. 581, 587, 43 S. Ct. 442, 67 L. Ed. 809)."

See, also, Branson v. Gee, 25 Or. 462, 36 P. 527, 24 L. R. A. 355; Holt v. Somerville, 127 Mass. 408; State v. Jones, 139 N. C. 613, 52 S. E. 240, 2 L. R. A. (N. S.) 313; Zimmerman v. Canfield, 42 Ohio St. 463; People v. Smith, 21 N. Y. 595, 597; Lent v. Tillson, 72 Cal. 404, 412, 14 P. 71; State Water Supply Commission v. Curtis, 192 N. Y. 319, 85 N. E. 148; New Orleans, etc., R. Co. v. Hemphill, 35 Miss. 17; Sloan v. Lawrence County, 134 Ark. 121, 203 S. W. 260; Hessel v. A. Smith & Co. (D. C.) 15 F. Supp. 953.

A great array of authorities might be cited in support of our conclusion, but the question is so well settled, and by such eminent authorities, that we do not consider it necessary to incumber this opinion with further citations.

It is ordered that these proceedings be, and they are hereby, dismissed.