ARROWHEAD FREIGHT LINES, LTD., a Corpora-
TION, and JACK E. PALSGROVE, Appellants, *v.*
JAMES WHITE, Respondent.

No. 3839

September 20, 1955.                                    287 P.2d 718.

*Morse, Graves & Compton,* of Las Vegas, for Appel-
lants.

*Foley Brothers,* of Las Vegas, for Respondent.

# OPINION

By the Court, MERRILL, C. J.:

This is an action for damages for negligence. White brought suit against Arrowhead Freight Lines and its employee Palsgrove. After trial the jury's verdict was in favor of the defendants. Upon White's motion a new trial was ordered by the trial court upon the grounds of insufficiency of the evidence and that the verdict was against law. From that order for new trial Arrowhead and Palsgrove have appealed.

The law of Nevada regarding such an appeal is well digested in Nevada Rock & Sand Company v. Grich, 59 Nev. 345, 365, 93 P.2d 513, 521. The question is not whether we, as an appellate court, on the record before us would have reversed the jury's verdict as without evidentiary support. The question, rather, is whether upon that record the trial court can be said to have abused its discretion in granting new trial. As stated in Treadway v. Wilder, 9 Nev. 67, 70, "It must be borne in mind that the nisi prius courts in reviewing the verdict of juries are not subject to the rules that govern appellate courts. They may weigh the evidence and if they think injustice has been done grant a new trial where appellate courts should not or could not interfere." We must, then, respect not the jury's verdict but the trial court's judgment (that the evidence clearly preponderates against the verdict or that it would result in injustice) unless that judgment is clearly wrong.

With these rules of law in mind we turn to the facts of this case. The issue is as to alleged negligent conduct on the part of Palsgrove in the course of his employment. The trial court was of the view that negligence had been established by a clear preponderance of the evidence.

Appellant Arrowhead had been engaged to haul a truckload of reinforcing steel to a site in Las Vegas where one Davey, as general contractor, was in charge of construction. With Appellant Palsgrove as driver the load arrived at the site. It was during the course of the unloading that the accident in question occurred.

The steel rods were loaded on a flat bed semitrailer in the form of bundles 30 to 40 feet in length, several rods being wired together to form each bundle. The ordinary practice in unloading such bundles of steel is to do so with a crane mounted on the bed of the trailer. A crane had been ordered for this purpose by the general contractor, Davey, but failed to arrive. It was then agreed between Davey and Palsgrove that the steel be unloaded by dragging the bundles off the side of the trailer. For this purpose a pickup truck owned by Davey was used to furnish the necessary power. From its rear a cable was attached to the center of each bundle. As the pickup proceeded away at right angles to the trailer, the bundle was dragged off the side.

It is recognized that an element of danger attaches to this method of unloading bundles of this type. Due to the extremely flexible nature of the steel, it is essential that the cable be precisely centered on the bundles so that they are squarely dragged from the trailer, both ends leaving the bed simultaneously. Should a bundle be dragged off at an angle, the flexible characteristics of the long steel rods would impart a whiplike action to the bundle, rendering it impossible to control.

Five persons were engaged in the unloading process. Appellant Palsgrove stationed himself on the bed of the trailer and assumed the responsibility of centering and attaching the cable to each bundle as it was to be dragged

off. Davey, standing a few feet from the trailer, received Palsgrove's signal that the cable was attached and, in turn, signaled the pickup to proceed. The other three persons were employees of Davey. One operated the pickup. The function of the other two was to release the cable from each bundle after it had been dragged from the trailer and then hand the cable end back to Palsgrove. Respondent was one of the two so engaged.

The testimony is in some conflict as to the precise manner in which the injury occurred. For the purposes of this opinion we accept Palsgrove's version. According to his testimony, at the time of the accident but two bundles remained to be unloaded. It was found that the rods of one had become so interlaced with the rods of the other that the cable could not be centered on either bundle until they had first been separated. Palsgrove attached the cable to the end of one bundle. It was dragged from the trailer at an angle with consequent whip-like action, the loose end striking and injuring respondent. According to Palsgrove, before attempting to unload the bundle he had, within earshot of the others, explained the problem to Davey and they had agreed that with the cable attached to the end of the bundle the pickup was to proceed no further than necessary to separate the bundles in the bed of the trailer. The cable was then to be centered on each bundle before it was dragged off. According to Palsgrove the dragging off of the bundle must have occurred through the misunderstanding of the pickup driver.

All three employees of the contractor, including respondent and the driver of the pickup, testified that they heard no such conversation, had no such understanding themselves, received no warning or special instructions from Palsgrove, had no knowledge that a change in procedure was necessary or would take place, or that they should take any steps to protect themselves other than those they had regularly been taking. Their testimony appears to conflict directly with that of Palsgrove as to the manner in which he himself had acted

and as to the existence, among those participating in the unloading, of any knowledge of the circumstances or general understanding of the procedure to be followed.

Upon the record we cannot say that the trial court was clearly wrong in its judgment or that there was a clear preponderance of evidence in favor of the verdict. The court's order granting new trial must, then, be held a proper exercise of discretion. Nevada Rock & Sand Co. v. Grich, supra.

Appellants contend that the trial court was guilty of inconsistent action in granting a new trial since before the matter went to the jury the court had denied the plaintiff's motion for a directed verdict upon the question of liability. These rulings, however, are not inconsistent since the governing principles and considerations are different. A verdict can be directed only when there is no substantial evidence to support a recovery by the party against whom it is directed. A new trial may be granted notwithstanding the existence of substantial evidence in favor of the verdict when that verdict in the judgment of the court is contrary to the clear weight of the evidence or results in a miscarriage of justice. Hawkins v. Sims, 4 Cir., 137 Fed.2d 66.

Affirmed with costs.

BADT and EATHER, JJ., concur.