THE AEROVILLE CORPORATION, a Corporation, Appellant, v. LINCOLN COUNTY POWER DISTRICT No. 1, a Municipal Corporation of the State of Nevada, Respondent.

No. 3864

December 9, 1955.                                     290 P.2d 970.

*Harry H. Austin,* of Las Vegas, for Appellant.

*Jo G. Martin,* of Pioche, for Respondent.

## OPINION

By the Court, MERRILL, C. J.:

This is an action for condemnation of land through right of eminent domain brought by Lincoln County Power District No. 1 against the Aeroville Corporation of Clark County. In the trial below the jury found for condemnation and fixed damage to the defendant for the taking at $10,000. The trial judge, feeling this award to be excessive, granted new trial upon this issue. Aeroville has taken this appeal from the judgment of condemnation and from the order granting new trial.

Upon its appeal from the judgment, Aeroville first contends that a taking of land for the purpose here involved is not permitted by the law of this State. Section 9153, N.C.L. 1929, Supp. 1931–1941, provides: "Subject to the provisions of this chapter, the right of eminent domain may be exercised in behalf of the following public uses: * * * 8. Telegraph, telephone, electric light, and electric power lines, and sites for electric light and power plants. * * *."

The condemnation here involved is for the purpose of partial relocation of a high-voltage power line which extends from Hoover Dam to the Pioche Mining District in Lincoln County. The line was originally located in 1936. Based upon a line of authority exemplified by In Re Poughkeepsie Bridge Co., 108 N.Y. 483, 15 N.E. 601 and Lusby v. Kansas City M. & B. R. Co., 73 Miss. 360, 19 So. 239, 36 L.R.A. 510, Aeroville contends for the rule that in the absence of express statutory authority the right of eminent domain is exhausted by the original location and that no right to condemn land for a relocation exists.

In our view the rule of these cases is simply that unless the condemnor has the right to change the location of its line, land cannot be condemned for such a purpose. In these cases it was clear that no such right existed. In both cited cases, for example, the corporate charter as granted by legislative act expressly required that the corporation select its proposed route and file for public record a map of that route within a given period of time. It was given no power to place its facilities elsewhere and under the expressed limitations upon its choice of site no such power could reasonably be implied. As stated by the New York court in the Poughkeepsie Bridge case, "This we think exhausted its power of choice and the location so made was final and could not be changed in the absence of legislative authority." The purpose of the proposed condemnation was, then, unlawful.

No such limitation upon its power of choice is to be found in the charter of the Lincoln County Power District. That district was incorporated pursuant to the provisions of the Power District Law of Nevada, Secs. 5180.01–5180.18, N.C.L. 1929, Supp. 1931–1941. The powers of districts so created are by the act itself stated in extremely broad terms. Section 5180.08 provides, "Any district created pursuant to the provisions of this act shall be vested with all the powers necessary and requisite for the accomplishment of the purpose for

which such district is created, capable of being delegated by the legislature. No enumeration of particular powers herein created shall be construed to impair or limit any general grant of power herein contained nor to limit any such grant to a power or powers of the same class or classes as those enumerated. The district is empowered to do all acts necessary, proper or convenient in the exercise of the powers granted under this act." In the same section, among the particular powers set forth is the following, "To acquire by * * * exercise of the power of eminent domain * * * real and personal property of every kind within or without the district * * *."

There can be no doubt that under such broad authorization the district had full power to change the location of its line. Assuming legal necessity for such change to exist, there can be no doubt that an exercise of the right of eminent domain in behalf of such change was proper. Wallace v. City of Winfield, 98 Kans. 651, 159 P. 11; Burkhard v. Pennsylvania Water Co., 234 Pa. 41, 82 A. 1120; Bogert v. Hackensack Water Co., 101 N.J.L. 518, 129 A. 138.

Aeroville next contends that no legal necessity for the change of location has been shown to exist and that condemnation for this reason was unauthorized.

It appears that at the time of commencement of this suit the existing line was in the immediate vicinity of the Nellis Air Force Base of the United States Government in Clark County and actually crossed a proposed extension of the aircraft zone of approach to the landing field. A series of aircraft accidents resulting from collisions with the power line in the neighborhood of the field had led the United States to insist upon a change of location. Aeroville contends that unless the United States itself had condemned and taken the old power line right of way, these facts may not be asserted by the district to establish necessity for its taking.

Regardless of the merits of this contention, however,

the district does not rely upon the needs of the United States, but has established its own case of necessity for relocation. The aircraft collisions with its power line had resulted in disruptions of its service which were far from trivial. Such a condition, if permitted to continue, would clearly affect, if not seriously frustrate, the purposes for which the district had been organized. A retaining of its power line across the aircraft zone of approach to the field might well be expected to increase substantially the extent of service interruption.

The expediency of constructing a particular public improvement ordinarily is not a judicial question, but a political one for the judgment and discretion of the agency to which authority has been delegated by the legislature. Courts generally will not interfere unless it clearly appears that such discretion has been abused and the proposed improvement is not in the public interest. See: Schrader v. Dist. Ct., 58 Nev. 188, 73 P.2d 493; 18 Am.Jur. 734, Eminent Domain, Sec. 107. Certainly this cannot be said to be the case here. The district has amply supported its exercise of discretion.

Aeroville next complains that the route of the relocation is poorly and extravagantly selected; that it fails to follow section lines and in other respects completely disregards the interests of those whose property it crosses. It is well settled, however, that the choice of lands to be used for a particular public improvement generally lies within the discretion of the agency exercising the right of eminent domain and that such discretion will be respected save where malice or lack of good faith appears or where oppressive overreaching or public injury results. State v. Pinson, 66 Nev. 227, 207 P.2d 1105; Goldfield Consolidated Milling & Transportation Company v. The Old Sandstorm Annex Gold Mining Company, 38 Nev. 426, 150 P. 313; Overman Silver

Mining Company v. Corcoran, 15 Nev. 147. We must, then, reject Aeroville's contention.

Aeroville next contends that in this suit the district improperly is party to champerty and maintenance on the part of the United States. The record demonstrates that the government has agreed to reimburse the district for the cost of relocation. Aeroville contends that the United States is, therefore, in the position of financing and sponsoring this litigation.

It cannot be said that the district itself is without substantial interest in the proceedings. Furthermore the government has agreed not to finance a law suit, but to reimburse the district for the cost of relocation, including surveying and construction of the relocated line, the obtaining and paying for voluntary easements and other necessary and incidental expense involved in moving the line. At the time the agreement was reached it could not have been known that this litigation would result. The government, then, cannot be said to be intermeddling through stirring up litigation and strife in a matter which should be of no concern to it. No one could deny that it has a necessary interest in the subject of the agreement and that that subject is proper. The contention is wholly without merit.

Upon the issues raised by the appellant the judgment of condemnation must be affirmed.

Upon its appeal from the order granting new trial Aeroville contends that the evidence as to damage clearly preponderates in favor of the jury's verdict fixing that damage at $10,000; that it was, therefore, an abuse of judicial discretion to grant a new trial upon the issue of damage. In the view of the trial judge a clear preponderance of the evidence demonstrated that the jury's award was excessive. As this court recently pointed out in Arrowhead Freight Lines v. White, 71

Nev. 257, 287 P.2d 718, it is not for us to determine in which direction the evidence preponderates. Unless the determination of the trial judge was clearly wrong, his exercise of discretion must be respected.

The record demonstrates a substantial difference of opinion as to value of the property condemned. Witnesses for Aeroville placed a comparatively high value upon the property, basing opinions upon expectation of future development of the area involved, which area is now undeveloped desert land. Witnesses for the district placed a comparatively low value, basing their opinions upon recent sales of land in the area involved. The opinions of the latter witnesses amply support the trial judge in his view that the jury award was excessive. It cannot, then, be said that he was clearly wrong.

The order granting new trial is affirmed. Subject to that order, the judgment of condemnation is affirmed. Costs to respondent.

BADT and EATHER, JJ., concur.