FRED W. SCHOPPER, LENORA A. SCHOPPER, AND ROBERTA J. SCHOPPER, DBA SCHOPPER'S NURSERY COMPANY, AND CHARLES CUNNINGHAM, APPELLANTS, v. EDWARD KELLEY, RESPONDENT.

No. 4203

December 11, 1959                    347 P.2d 279

*Vargas, Dillon and Bartlett* and *Alex A. Garroway,* of Reno, for Appellants.

*Jack Streeter,* of Reno, for Respondent.

## OPINION

By the Court, PIKE, J.:

Appeal from an order granting a motion for new trial.

Appellants Schopper and Cunningham were defendants in an action brought by respondent Kelley to recover damages for personal injuries sustained by Kelley and for damage to Kelley's car. The jury returned a verdict in favor of appellants, and the trial court granted respondent's motion for a new trial, from which order this appeal is taken.

At about noon on June 5, 1957 respondent Kelley drove his car in an easterly direction on Kietzke Lane, a four-lane paved highway, near the point of its intersection with Coney Island Drive, a two-lane paved highway. Such intersection is situated near the easterly city

limits of Reno, Nevada, and the two highways there intersect at approximately right angles. Kelley, driving his 1940 Chevrolet sedan, entered the intersection, making a left-hand turn so as to proceed in a northerly direction on Coney Island Drive. After completing the turn and while proceeding across the northerly or outside lane for westbound traffic on Kietzke Lane he was struck by a 1954 Ford pickup truck driven by appellant Cunningham, an employee of appellants Schopper.

The portion of Kietzke Lane which included the intersection was designated as a 45-mile-per-hour zone by appropriate official highway signs. Stop signs were in place requiring vehicular traffic along Coney Island Drive to stop before entering the intersection from either the north or south. There is evidence that Kelley stopped before entering the intersection and also that he signaled his intention to make a left turn. He testified that he saw the westbound pickup truck after he had started into the intersection and when the truck was about 300 feet away.

Cunningham, driver of the pickup, testified that he was driving west in the northerly or outside lane when he saw the Kelley car in the intersection, some 200 feet distant. He estimated the speed of the pickup at 38 miles per hour, and testified that although he applied his brakes he was unable to avoid striking the Kelley car as it was crossing the lane that he was in. The testimony of the persons present when the accident occurred, other than the pickup driver, indicates that their estimate of the pickup's speed was about 45 miles per hour. Marks on the pavement made by the pickup's tires after its brakes were applied extended eastward 132 feet from the point of collision. The impact of the pickup skidded the Kelley car sideways for some six feet into a southbound car on Coney Island Drive which had stopped at the stop sign before crossing the intersection. The impact of the Kelley car as it was forced into this third car, driven by one Kramer, caused the third car to be forced backwards into a fourth car, driven by a Mrs. Boynton, which had stopped immediately behind the third car on Coney Island Drive. A university faculty

member in the field of physics, Dr. George Barnes, testified as an expert and, in response to hypothetical questions, stated that his computations showed the pickup to be traveling some 54 miles per hour at the time of collision.

As indicative of the volume of traffic on Kietzke Lane, Kramer, the driver of the car which was struck by the skidding Kelley car, estimated that 35 or 40 vehicles traveling at various speeds, had passed while he was waiting for an opportunity to cross Kietzke Lane. Respondent Kelley testified that at least six or eight cars had passed on Kietzke Lane at speeds of about 35 miles an hour as he waited at the intersection before entering it and making his left-hand turn.

In returning its verdict in favor of appellants the jury indicated that it had based such verdict upon the court's instruction relating to contributory negligence. Although respondent's motion for new trial stated that it was made upon the several statutory grounds enumerated therein and the order granting respondent a new trial stated the same grounds, a review of the entire record indicates that the only ground requiring our consideration is that of the asserted abuse of discretion of the trial judge in granting a new trial because of insufficiency of the evidence to justify the verdict. This court has held that if a motion for a new trial was properly granted on this ground it is immaterial whether the trial court was in error in granting the new trial on other grounds. Nevada Rock & Sand Co., Inc. v. Grich, 59 Nev. 345, 93 P.2d 513.

Appellants recognize that a trial judge has discretion to grant or refuse a new trial, but assert that, in the instant case, there was an abuse of discretion by the trial judge in granting the motion for new trial.

Appellants and respondent refer to the decision of this court in Nevada Rock & Sand Co., Inc. v. Grich, supra, and respondent also places reliance upon the later decisions of this court: Arrowhead Freight Lines, Ltd. v.

White, 71 Nev. 257, 287 P.2d 718; Aeroville Corp. v. Lincoln County Power Dist. No. 1, 71 Nev. 320, 290 P.2d 970; Pagni v. City of Sparks, 72 Nev. 41, 293 P.2d 421.

The earlier decision of Goldfield Mohawk Mining Company v. Frances-Mohawk Mining & Leasing Co., 33 Nev. 491, 112 P. 42, 43, also relates to the point requiring determination here. In the last cited case the jury returned a verdict for plaintiff and defendant moved for a new trial urging the statutory ground of "insufficiency of the evidence to justify a verdict." The trial court refused to pass upon such ground and stated in effect that his reason for such refusal was that he did not consider that it was a proper exercise of judicial discretion for the trial court to set aside the verdict of a jury because, in the mind of the judge, the evidence did not justify the result. This court reversed the trial court on such ruling and set aside its order denying a motion for a new trial, with instructions to the trial court to consider and pass upon such ground. In holding that the trial judge had misconceived his judicial duty in failing to pass upon this vital ground of error and, in doing so, had deprived the movant of a substantial right, the decision reads, 33 Nev. 491, 496, 112 P. 42, 44, "It is made his [the trial judge's] duty under the law, upon motion for a new trial, where this ground [insufficiency of the evidence to justify the verdict] is assigned, to review the evidence, and if he is clearly satisfied in his judgment that the evidence is insufficient to sustain the verdict to set it aside, and if sufficient to refuse to disturb it, and in the discharge of his official duty under his oath of office he is required to so act." Authorities of similar import from the courts of other jurisdictions were then reviewed and quoted with approval.

In Arrowhead Freight v. White, supra, a negligence action, following the jury's verdict for defendants, plaintiff's motion for new trial was granted upon the grounds of insufficiency of evidence and that the verdict was against law, and the defendant appealed from that order. This court affirmed the action of the trial court in

granting a new trial. After commenting that the law of Nevada on the point then being considered was well digested in Nevada Rock & Sand Co. v. Grich, supra, the court stated, 71 Nev. 257, 258, 287 P.2d 718, "The question is not whether we, as an appellate court, on the record before us, would have reversed the jury's verdict as without evidentiary support. The question, rather, is whether upon that record the trial court can be said to have abused its discretion in granting new trial. As stated in Treadway v. Wilder, 9 Nev. 67, 70, 'It must be borne in mind that the nisi prius courts in reviewing the verdict of juries are not subject to the rules that govern appellate courts. They may weigh the evidence and if they think injustice has been done grant a new trial where appellate courts should not or could not interfere.' " The decision then reviewed the evidence and held, 71 Nev. 257, 261, 287 P.2d 718, 720, "Upon the record we cannot say that the trial court was clearly wrong in its judgment or that there was a clear preponderance of evidence in favor of the verdict. The court's order granting new trial must, then, be held a proper exercise of discretion. Nevada Rock & Sand Co. v. Grich, supra."

The decision of this court in Aeroville v. Lincoln Power, supra, a land condemnation case, likewise involved a situation where the trial court granted a new trial and, upon appeal, such action was affirmed as, from a review of the record, it could not be said that the trial judge was clearly wrong in granting the new trial.

Pagni v. City of Sparks, supra, was a negligence action against the city of Sparks and its contract garbage haulers. The jury returned a verdict for the plaintiff, and the court granted a new trial to the defendants. The main question raised by the appeal was whether the trial court abused its discretion in so granting a new trial. The decision reiterated the above outlined principles to be applied for the purpose of determining whether or not there had been an abuse of discretion by the trial court in granting the new trial, recognized the above cited authorities as governing the application of the

rules to the particular evidence before the court, and held that there had been no abuse of discretion in the order appealed from.

From a consideration of the evidence in the instant case and of the legal authorities enunciating the foregoing principles for the determination of the issue now before us, we conclude and hold that there was no abuse of discretion on the part of the trial court in vacating the jury verdict in favor of appellants and in granting respondent's motion for a new trial.

The order of the trial court granting new trial and vacating judgment, affirmed, with costs to respondent.

MCNAMEE, C. J., and BADT, J., concur.