[Civ. No. 8476.   First Appellate District, Division Two.—October 10, 1932.]

CHARLES N. CUNNINGHAM, Appellant, v. JOSEPH E. COX, Respondent.

Avery J. Howe for Appellant.

Frank V. Campbell and L. H. Schellbach for Respondent.

SPENCE, J.—Plaintiff sought to recover damages for the death of his minor son, Charles N. Cunningham, Jr., alleging that said death was caused by the negligence of the

defendant in operating his automobile. Defendant denied any negligence on his part and pleaded contributory negligence on the part of the deceased boy. The cause was tried with a jury and a verdict was rendered in favor of the defendant. From the judgment entered upon the verdict plaintiff appeals.

The accident occurred at approximately 7:20 on the night of January 29, 1931, on the Saratoga-San Jose road. This road runs in a general westerly direction through an orchard section of Santa Clara County from San Jose to Saratoga. A short distance westerly from the scene of the accident said road is intersected by the Saratoga-Mountain View road. There is an interurban car track in the center of the road situated in the middle of a strip of asphalt surfacing about nine feet in width. The balance of the improved portion of the road consists of two concrete strips, each about ten feet in width, located on either side of and immediately adjoining the asphalt strip. Both the defendant and the deceased boy lived in the vicinity of the scene of the accident. On the night in question the defendant, accompanied by his wife, was returning from Saratoga and was driving his Ford sedan automobile along said road in an easterly direction. He intended to stop at the Oldham residence on the north side of the highway and as the night was dark he drove his car over the car track and on to the north side of the highway some little distance before reaching his intended destination. The deceased, a boy of fourteen years, and another younger boy named Robert La Fontain, were proceeding on foot in a westerly direction along the highway from the residence of the deceased boy toward Saratoga. There is comparatively little conflict in the testimony regarding the manner in which the accident happened. The defendant's testimony, corroborated by that of his wife, was that he was driving slowly at a speed of not over twenty miles per hour; that his lights were lit and, although he was looking ahead in the direction in which he was proceeding, he saw nothing on the highway until just before the collision; that the small boy (Robert La Fontain) ran ''right close in front of the machine'' from defendant's right side ''like that (indicating) and just as he got across the other boy (the deceased)

seemed to run right into the lights and the car hit him there''. The only eye-witness testifying on behalf of plaintiff was Robert La Fontain. He was but thirteen years of age at the time of the accident and his testimony was indefinite and uncertain in several particulars. He admitted, however, that the car had its lights lit and that it was not going fast. He further admitted that he and the deceased were joking and chasing each other along the highway. The deceased was running near the car track and ahead of the witness. At the time of the accident they were not merely jogging along but the boy testified, ''We were going kind of fast'' and ''I was trying to catch up to him again''. With respect to defendant's automobile, he stated, ''A car came in view and I jumped off the road and I guess Newton (the deceased) did not see it.'' This witness estimated that the car was twelve feet from him when he first saw it. The deceased was struck by the right front portion of the car, and after the accident the front of the car was spattered with orange juice and orange pulp which was not there before the accident. The evidence clearly indicated that deceased was carrying some oranges when struck, but the manner in which he obtained them was not entirely clear. Neither the deceased's father nor his companion knew of the deceased carrying any oranges from his home. There were ripe oranges on the trees along the sides of the road near the point of collision. The La Fontain boy did not testify positively, but stated that he did not think the deceased stopped to get any oranges and that he did not think that the deceased had any oranges in his hand at the time the accident occurred. The uncertainty of the boy's testimony in this connection, together with the undisputed facts in evidence, made quite plausible the theory of respondent's counsel which was that the deceased had been engaged in the boyish prank of gathering some of the neighbors' oranges at the side of the road and had run headlong into the path of the automobile in his flight.

Appellant first contends that the verdict is not sustained by the evidence, but there is no merit in this contention. Even if negligence on the part of respondent be conceded, the foregoing statement shows that there was ample evidence to support an implied finding that the de-

ceased was guilty of negligence proximately contributing to the accident.

In arguing the above contention and other contentions found in the brief, appellant lays great stress upon the nature of the district in which the accident occurred. He endeavored to prove upon the trial that this was a "residence district" within the meaning of the California Vehicle Act and the facts were quite thoroughly developed and were undisputed. In our opinion these undisputed facts clearly show that the district was not "a residence district" within the meaning of the act. We may say parenthetically that several photographs of the road in the vicinity of the scene of the accident were introduced in evidence. These photographs show long stretches of the road bordered by large shade trees and orchards, but in none of these photographs can we locate a house of any description. Any houses located in the vicinity were no doubt situated in the orchards some distance back from the road. The distance of the setback appears to be immaterial under the act, but we mention it only to indicate that the district had none of the appearances of what is commonly termed "a residence district".

Section 28½ of the California Vehicle Act very specifically defines "a residence district" as follows: "(b) A 'residence district' for the purpose of this act shall mean the territory contiguous to a public highway, not comprising a business district as herein defined, when the property fronting on one side of said highway for a distance of at least a quarter of a mile is occupied by thirteen or more separate dwelling houses or business structures, or where the property fronting on both sides collectively of said highway for at least a quarter of a mile is occupied by sixteen or more separate dwelling houses or business structures. (c) Every public highway shall be conclusively presumed to be outside of a business or residential district unless its existence within a business or residential district shall be established by clear and competent evidence as to the nature of the district, and unless signposted when and as required by this act." The required signposting is specified elsewhere in the act and the signs must be "conspicuously placed on every such highway at the boundary lines of such residence district". (California Vehicle Act, sec. 116.)

It is therefore clear that no road is deemed to be within a "business or residence district" for the purposes of the act unless it appears first, that there is within the district the required density of structures, and second, that the district is signposted "at the boundary lines" thereof; and if the uncontradicted testimony affirmatively shows either an insufficient density of structures within the alleged district or a failure to post signs at the "boundary lines" of the alleged district, then the district is outside of a "business or residence district" for the purposes of the act.
Appellant relies upon the fact that the board of supervisors had passed an ordinance in 1920 declaring the territory "along the line of the San Jose and Saratoga road running from the junction of said road with the Saratoga and Mountain View road, easterly along said San Jose and Saratoga road for a distance of 1500 feet" to be closely built up territory within the meaning of section 1 of the California Vehicle Act (the forerunner of the present act), and also ordering signs to be posted at the "boundary lines" of said district; and the further fact that a twenty-mile sign was posted near the easterly boundary line of the district on the north side of the highway which might be viewed by traffic going westerly toward Saratoga. The accident happened at a point to the west of this sign and between it and the junction of the Saratoga and Mountain View road. Appellant himself testified that there were but eight houses including those on both sides of the road within the next quarter of a mile going westerly toward Saratoga from this sign and that there was "no other 20 mile sign on that road at any place". In other words there was no sign at the westerly boundary line of the alleged district which sign might have been viewed by traffic going easterly from Saratoga and in the direction which respondent was driving. It therefore affirmatively appears that there was neither sufficient density of structures nor sufficient signposting to make the district in question a "residence district" within the meaning of the act and under these circumstances appellant could not rely upon any resolution which the board of supervisors may have adopted with relation to said territory. Upon the record before us it would have been entirely proper to have instructed the jury that the scene of the accident was not within a "business or residence district".

The trial court neither instructed the jury, as requested by respondent, that the scene of the accident was not within a "residence district" nor did it instruct the jury as to what constituted a "residence district" within the meaning of the act, but in our opinion its failure to do so was not prejudicial to appellant. Subdivision *a* of section 113 of the California Vehicle Act relating to speed was read to the jury and they were also instructed that the maximum speed limit at the time and place of accident was "40 miles per hour if the place of the accident was not within a business or residence district". Appellant objects to the last mentioned instruction on the ground that the maximum limit was 20 miles per hour "if the defendant was driving in a residence district". From what has been said above, it is apparent that this objection is without merit. Furthermore there was no evidence to show that appellant was driving in excess of 20 miles per hour. █ Appellant makes the further objection that the jury was thereby instructed that respondent "had a right to drive 40 miles per hour after dark on the wrong side of the highway". No such meaning could reasonably be derived from the above mentioned instructions when read together as the maximum speed instruction was qualified by the instruction embodying the provisions of subdivision *a* of section 113 of the California Vehicle Act. If appellant desired that the jury be specifically instructed to that effect, he should have proposed an instruction for that purpose.

█ Appellant further claims that the trial court erred in refusing his proposed instruction reading: "It is lawful for a pedestrian to walk upon any portion of a highway when within a residence or business section or district." The trial court did read to the jury section 150½ of the California Vehicle Act, providing: "It shall be unlawful for any pedestrian to walk along and upon any highway outside of a business or residence district otherwise than close to his left-hand edge of the highway." We find no error of which appellant may complain, for the evidence affirmatively showed that the accident occurred outside of a "business or residence district".

█ Appellant makes the further contention that the trial court erred in refusing to give his purported instruction reading: "If you shall find that the defendant was

driving on the left or wrong side of the street or highway, then I instruct you that he is guilty of negligence as a matter of law." It is a sufficient answer to point out that the court fully covered the subject matter of this instruction by reading section 122 of the Vehicle Act and also instructing the jury that "The violation of law constitutes negligence *per se.*"

Appellant proposed the following instruction, which was refused: "When each of the parties, as they do here, contend that the other was responsible for the accident, this issue is to be determined against the party who is shown to have had the better opportunity or to have been in the better situation to avert or prevent the accident, and this means the party who is in a better position to foresee, anticipate or know that the accident might occur." Appellant states that this instruction "attempted to embody the last clear chance rule". We must confess that we did not recognize it. It is conceded that it "does not clearly state the law", but appellant contends that "it does sufficiently put in issue the last clear chance doctrine". We cannot agree with appellant, and in our opinion the instruction was properly refused even if it be assumed that there was evidence which might have warranted the giving of a properly framed instruction embodying the last clear chance doctrine.

Appellant further contends that the jury was confused by the conflicting instructions of the trial court relating to what constituted a "residence district". The instructions referred to were in reality rulings of the trial court during the taking of evidence on this subject. The jury may have been confused by these various rulings, but, as we have indicated above, we cannot conceive of any prejudice resulting to appellant's cause. The accident happened outside of a "residence district", and if, by reason of these rulings and the failure of the trial court to definitely instruct on this subject, the jurors were confused or were led to believe the district was a "residence district", appellant could not have been adversely affected thereby.

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.