[L. A. No. 16099. In Bank.—May 1, 1937.]

ADA J. RODKEY, Respondent, v. CITY OF ESCONDIDO (a Municipal Corporation), Appellant.

A. L. Hubbell, City Attorney, for Appellant.

Renwick Thompson and Fred Kunzel for Respondent.

SHENK, J.—The plaintiff sued the City of Escondido for damages for personal injuries. She was bounced from the back seat to the top of a sedan automobile in which she was riding and suffered an injury to her back. The jolt to the vehicle occurred while it was being driven in the daytime over a surface storm drain at the intersection of Fig Street and Grand Avenue in said city, on December 26, 1934.

The trial court found that the maintenance by the city of the storm drain was negligence which was the proximate cause of the injury and entered judgment for the plaintiff in the sum of $5,547.50. The defendant has appealed.

The automobile was being driven by the plaintiff's grandson in an easterly direction on Grand Avenue towards its intersection with Fig Street. There were six persons in the car, three in each seat. The trial court found that the car was being driven at a speed in excess of 25 miles an hour. It also found that the construction of the storm drain was such that it was not likely to be dangerous to automobiles being driven at a speed of 25 miles an hour. The area which the occupants were traversing was signposted as a residence district, and the vehicular speed limited therein was 25 miles an hour.

The drain was constructed as a saucer-shaped dip to permit the passage of storm waters from Fig Street across Grand Avenue. It was sixteen feet wide and graduated to a depth of six inches. It was visible to occupants of cars coming from a westerly direction for a distance of 125 feet. It had existed in the same condition for about three years except that for some time prior to the accident involved herein the road surface had sunk half to three-quarters of an inch at its easterly connection with the dip. This defect was not visible to ordinary vision. The court found that the city had had both actual and constructive notice of the dangerous condition of the surface drain.

The sufficiency of the evidence that the city council had either actual or constructive notice of any dangerous character of the storm drain might be and in fact is seriously questioned. There was no evidence that any injury had occurred to anyone in the three years of the existence of the storm drain prior to the date hereinabove mentioned, although

during that time some 400,000 automobiles had passed over its surface. The court itself held the view that a saucer-shaped dip of the dimensions stated was not ordinarily dangerous to motor vehicular traffic. The mere existence of the minor defect caused by the slight sinking of the contiguous surface of the roadway was not alone sufficient to charge the city with constructive notice. (*Nicholson* v. *City of Los Angeles*, 5 Cal. (2d) 361 [54 Pac. (2d) 725].) There was no evidence that the city council had actual knowledge of that defect.

However, if we assume that the evidence was sufficient to place the city on notice that the drain was so constructed as to be dangerous to automobiles traveling over it at a speed in excess of 25 miles an hour, we still must consider the crucial question whether under the particular facts the city was bound to maintain the street in a condition to be absolutely safe for travel thereover at higher speeds. Evidence was introduced as to the number of business and residence structures fronting on the highway which was designated and signposted by the city as a residence district. The California Vehicle Act in effect at the time involved (Stats. 1929, pp. 508, 510, sec. 28½b), defined a residence district as the "territory contiguous to a public highway . . . when the property fronting on one side of said highway for a distance of at least a quarter of a mile is occupied by thirteen or more separate dwelling-houses or business structures, or where the property fronting on both sides collectively of said highway for at least a quarter of a mile is occupied by 16 or more separate dwelling-houses or business structures".

It appears to be the contention of the respondent that if the highway traversing the district is longer than one-quarter of a mile—in this instance it was six-tenths of a mile—the same ratio must be maintained throughout the length of the highway to constitute it a residence district. However, the language of the 1929 statute contemplated that a residence district might front on a highway for a distance greater than one-quarter of a mile and that but one-quarter mile of the residence district should contain the density of structures specified. If this condition obtained the speed of vehicular traffic through the length of highway traversing the entire district could be so restricted. This was the law at the time of the accident. What change was effected by the 1935 stat-

ute (Stats. 1935, p. 93, sec. 90), by the omission of the words "at least" and providing for the same ratio to the length of the highway, should not color or control the otherwise plain meaning of the act as it read in 1929. Both the photographic and the numerical evidence in the record before us indicate that the city was within its rights in designating the area as a residence district. There is nothing in the cases of *Cunningham* v. *Cox*, 126 Cal. App. 685 [15 Pac. (2d) 169], or *Adrian* v. *Guyette*, 14 Cal. App. (2d) 493 [58 Pac. (2d) 988], relied upon by the plaintiff, which is inconsistent with this conclusion.

■ A municipality is not bound to maintain its highways in a condition to preclude the possibility of injury or accident. It is not an insurer of the safety of travelers on its streets. The duty imposed upon it under the statute of 1923 (Stats. 1923, p. 675), is to exercise ordinary care to maintain its streets in a reasonably safe condition for their use in a proper manner. (*Nicholson* v. *City of Los Angeles, supra; Waldorf* v. *City of Alhambra*, 6 Cal. App. (2d) 522 [45 Pac. (2d) 207]; *Beeson* v. *City of Los Angeles*, 115 Cal. App. 122 [300 Pac. 993]; *Brooks* v. *City of Monterey*, 106 Cal. App. 649 [290 Pac. 540].) It is not required to maintain the highway so as to insure freedom from accidents at every possible speed. ■ The city has the same right as an individual to assume that the motoring public will obey the law and therefore will moderate its speed in passing through a residence district. The record shows, and the findings do not negative the showing, that the storm dip was safe for cars traversing it up to speeds of thirty or thirty-five miles an hour. Under the particular facts we must conclude that the city has met the requirements of its duty to the traveling public. Negligence on its part is not therefore shown. ■ In such a case the question whether any negligence of the driver of the car is imputable to the plaintiff cannot affect the result. If the driver had been proceeding with due caution he would have been aware of the nature of the district and of the construction of the highway and if he had restricted his speed accordingly no untoward result would have ensued. Under the circumstances presented on this record his negligence must be deemed the sole proximate cause of the injury to the plaintiff and the city cannot be held liable. (*Waldorf* v. *City of Alhambra, supra.*) Comparison of the facts here with those

involved in the case of *Uttley* v. *City of Santa Ana*, 136 Cal. App. 23 [28 Pac. (2d) 377], cannot avail the plaintiff. The question whether the maintenance of the highway in its condition at the time of any accident is negligence, is a question to be decided upon the particular facts of each case. Negligence in the present case was not shown.

For the foregoing reasons the judgment should be and it is hereby reversed.

Thompson, J., Curtis, J., Langdon, J., and Seawell, J., concurred.

Rehearing denied.