[No. C060744. Third Dist. Mar. 29, 2010.]

IDA LANE et al., Plaintiffs and Appellants, v.
CITY OF SACRAMENTO, Defendant and Respondent.

1338

COUNSEL

Dreyer Babich Buccola Callaham & Wood, Hank G. Greenblatt and Jason J. Sigel for Plaintiff and Appellant Ida Lane.

Clayeo C. Arnold, Kirk J. Wolden and Douglas E. Stein for Plaintiff and Appellant John Montgomery.

Eileen M. Teichert, City Attorney, and Marcos A. Kropf, Deputy City Attorney, for Defendant and Respondent.

**OPINION**

**ROBIE, J.**—In these consolidated cases, plaintiffs John Montgomery and Ida Lane sought to hold defendant City of Sacramento liable for injuries they sustained when Montgomery's car struck a concrete divider on a city street. Concluding that plaintiffs had failed to raise a triable issue of fact as to whether the divider constituted a dangerous condition of public property for which the city could be held liable under Government Code[1] section 835, the trial court granted the city's summary judgment motion.

On appeal, we conclude the trial court erred in granting the city's motion because the city did not offer sufficient evidence to meet its initial burden of showing it was entitled to judgment as a matter of law. Accordingly, we will reverse the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Viewing the evidence in the light most favorable to plaintiffs (see *Fischer v. First Internat. Bank* (2003) 109 Cal.App.4th 1433, 1438 [1 Cal.Rptr.3d 162]), the following facts appear:

On October 31, 2006, Montgomery drove his Cadillac Seville to pick up Lane at Sacramento State University. The sun set at 5:07 p.m. that day, and it was getting dark when he picked her up.

At approximately 5:30 p.m., Montgomery was driving westbound (toward downtown) on J Street near its intersection with 48th Street, where there are two westbound lanes. Montgomery's car was in the inside (No. 1) lane.

More than 6,000 cars pass westbound through the intersection of J Street and 48th Street every day. On the west side of the intersection there is a concrete center divider that separates the two westbound lanes of J Street from the two eastbound lanes. The divider is a concrete berm or curb that is six to seven-and-one-half inches tall, 10 to 11 inches wide, and 120 to 125 feet long.

As Montgomery's car approached the intersection, there was another car traveling next to his in the outside (No. 2) westbound lane. There were also other cars coming in the other direction. As Montgomery's car entered the intersection, Lane told him to "watch out." He turned to look to the right and

---

[1] All further unspecified section references are to the Government Code.

got a glance of a car that appeared to be too close. He moved his car to the left to allow more room between the vehicles, and his car struck the end of the center divider, popping the left front tire. The car went up and came back into the No. 1 lane. The collision with the divider did not bring the car to a full stop but reduced the speed of the car from about 30 to 35 miles per hour to "just a few miles an hour." Montgomery managed to pull the car to the left into an alley.

In May 2007, Montgomery sued the city for the injuries he sustained as a result of the collision with the divider. In his first amended complaint, he alleged the city had "failed to properly mark, sign and maintain a center median (lane divider) in accordance with [its] own regulations and require-ments, resulting in a dangerous traffic condition."

In June 2007, Lane sued the city also. Lane alleged the collision "was the result of improper, inappropriate, and unsafe design, installation, mainte-nance, supervision, monitoring, inspection, control and management of the roadway and/or center median" and "the accident location constituted a dangerous condition of public property."

In October 2007, the cases were consolidated. In May 2008, the city moved for summary judgment on the grounds that "the center divider [was] not dangerous," Montgomery "failed to use due care," and "the divider did not cause the collision."[2] The city's argument that the divider was not dangerous was based on evidence regarding the absence of any other claims relating to the divider. Specifically, the city offered evidence that Bragg and Associates is the city's claims administrator and in that capacity maintains a computerized database of claims submitted to the city regarding injuries that might involve city property. The database contains records for claims submit-ted for at least the previous five years and may be searched for claims concerning specific locations in the city. At some unidentified time, Bragg and Associates searched the database for records of claims involving the center divider at J and 48th Streets but found none, other than the claims submitted by plaintiffs.

In support of its summary judgment motion, the city contended it was not liable for plaintiffs' injuries because "the center divider did not create a substantial risk of injury." The city contended the divider actually stopped Montgomery's vehicle from going " 'head-on' into opposing traffic" and, in

[2] The city also contended it was immune from liability to the extent plaintiffs' claims were premised on the city's alleged failure "to place regulatory signals, signs or markings" or "to mark or provide some other visual indicator for the center median" and that Lane's cause of action for negligence failed as a matter of law. No issues relating to these arguments are presented on appeal.

any event, the divider could not "be considered to have created a 'substantial risk of injury' to anyone" because "Plaintiffs' collision is the only reported collision, with the center divider, in the last seven years."

The city also contended it was not liable because "Montgomery did not use due care or use the roadway in a foreseeable manner when he violated the law" by "mov[ing] his car from his lane when such movement could not be made with reasonable safety," "by driving into the center median," and by "attempt[ing] to drive his car to the left of the roadway when traversing the intersection."

Finally, the city contended it was not liable because the center divider was not the proximate cause of plaintiffs' injuries in that the divider did not cause Montgomery to move his car to the left.

In opposition to the summary judgment motion, both plaintiffs offered declarations from traffic engineering experts. Lane's expert, William R. Neuman, asserted that the width of the No. 1 lane in which Montgomery was driving and the "travel way distance" from the center divider violated "minimum standards for traffic lanes of travel." Specifically, Neuman asserted that "the [city's] standards require lanes [to] be a minimum of 11 feet wide," but the lane in which Montgomery was driving was only eight feet seven inches wide from the bottom edge of the center divider to the center of the westbound lane line. Neuman also asserted that "the AASHTO standards require vertical curbs more than 6 inches high [to] be offset 1–2 feet from the edge of the traveled way,"[3] but here the center median had no "offset from [an] already too narrow travel way." Neuman also asserted that "the AASHTO standards provide for and recommend sloped ends or 'nose ramping' if a concrete vertical curb 6 inches or more is used as a median island."

Neuman expressed his opinion that "the extremely narrow lane width of the westbound number 1 lane, coupled with the lack of any offset from the travel way of . . . the concrete berm . . . is a dangerous condition of public property" because "it is reasonably foreseeable that a small deviation to the left in the path of a vehicle . . . would result in a collision with the raised concrete berm." Neuman also expressed his opinion that "more likely than not, [Montgomery's car] would not have collided with the raised concrete berm had the area [striped] as the number 1 lane met minimum standards for lane width and offset of a vertical curb from the travel way." "Furthermore, more likely than not, had the concrete berm met recommended standards for sloping ends of a median divider (berm), the force of the collision would have been reduced, minimized, or eliminated."

---

[3] AASHTO is the American Association for State Highway and Transportation Officials, which publishes guidelines for the design of local roads and streets.

Montgomery's expert, Kim Nystrom, expressed a similar opinion that the width of the lane in which Montgomery was driving was well below the width recommended by AASHTO. Nystrom asserted that narrow lane width "increases the likelihood of sideswipe accidents as well as hitting nearby fixed objects." Like Neuman, Nystrom expressed the opinion that the center divider constituted a dangerous condition.

Also in opposition to the summary judgment motion, plaintiffs offered photographic evidence of the condition of the center divider a couple of days after the accident. The photographs show the divider was scuffed and pitted, with much of its yellow paint worn or scraped off.

In ruling on the summary judgment motion, the trial court concluded that the city's evidence regarding the lack of other claims relating to the center divider was "sufficient to meet the City's initial burden of showing that the center median was not in a dangerous condition at the time of the injury." Accordingly, the burden shifted "to plaintiffs to produce evidence raising a triable issue of material fact." The court noted the opinions of plaintiffs' experts but concluded they were not sufficient to "raise a triable issue of material fact that the median, even in combination with the narrow number-one lane, presented a dangerous condition, as despite the existence of these defects, there is no evidence of the occurrence of any other accidents involving a collision with the center median over a period of seven years during which millions of vehicles traveled the same route as plaintiffs. Where there is no evidence of prior accidents, evidence of purported hazards does not support inference of [a] dangerous condition of public property, expert opinion notwithstanding." Consequently, the trial court granted the city's motion for summary judgment.

From the subsequent judgment entered in December 2008, plaintiffs timely appealed.

## DISCUSSION

### I

*Standard of Review*

A defendant may move for summary judgment "if it is contended that the action has no merit . . . ." (Code Civ. Proc., § 437c, subd. (a).) "A defendant . . . has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that

burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto." (*Id.*, subd. (p)(2).) "The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (*Id.*, subd. (c).)

"When the defendant moves for summary judgment, in those circumstances in which the plaintiff would have the burden of proof by a preponderance of the evidence, the defendant must present evidence that would preclude a reasonable trier of fact from finding that it was more likely than not that the material fact was true [citation], or the defendant must establish that an element of the claim cannot be established, by presenting evidence that the plaintiff 'does not possess and cannot reasonably obtain, needed evidence.' " (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1003 [4 Cal.Rptr.3d 103, 75 P.3d 30].)

"Because the trial court's determination [on a motion for summary judgment] is one of law based upon the papers submitted, the appellate court must make its own independent determination regarding the construction and effect of the supporting and opposing papers. We apply the same three-step analysis required of the trial court. We begin by identifying the issues framed by the pleadings since it is these allegations to which the motion must respond. We then determine whether the moving party's showing has established facts which justify a judgment in movant's favor. When a summary judgment motion prima facie justifies a judgment, the final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue." (*Hernandez v. Modesto Portuguese Pentecost Assn.* (1995) 40 Cal.App.4th 1274, 1279 [48 Cal.Rptr.2d 229].)

"The affidavits of the moving party are strictly construed, while those of the party opposing the motion are liberally construed, and doubts as to the propriety of granting the motion must be resolved in favor of the party opposing the motion." (*Miller v. Bechtel Corp.* (1983) 33 Cal.3d 868, 874 [191 Cal.Rptr. 619, 663 P.2d 177].)

## II

### Governing Legal Principles

Following the foregoing authorities, we begin by identifying the issues framed by the pleadings. Here, both plaintiffs alleged they were injured by a dangerous condition of public property. Thus, we turn to the pertinent law relating to a public entity's liability for such an injury.

Section 835 provides as follows:

"Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

"(a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

"(b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

For purposes of liability under section 835, " 'Dangerous condition' means a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." (§ 830, subd. (a).)

"Whether property is in a dangerous condition often presents a question of fact, but summary judgment is appropriate if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines that no reasonable person would conclude the condition created a substantial risk of injury when such property is used with due care in a manner which is reasonably foreseeable that it would be used." (*Mathews v. City of Cerritos* (1992) 2 Cal.App.4th 1380, 1382 [4 Cal.Rptr.2d 16], citing § 830.2.)

### III

*The City Did Not Meet Its Burden of Showing It Was*
*Entitled to Judgment on Plaintiffs' Claims Under*
*Section 835*

With the foregoing principles in mind, we turn to whether the city met its initial burden in moving for summary judgment. In support of its motion, the city offered three arguments as to why plaintiffs could not establish their

claims for liability under section 835. First, the city argued the divider did not create a substantial risk of injury and therefore did not constitute a dangerous condition of public property. Second, the city argued Montgomery did not exercise due care or act in a reasonably foreseeable manner when he drove his car into the divider. Third, the city argued the divider did not cause the collision. The trial court agreed with the first argument; we, on the other hand, do not find merit in any of them.

A

*Dangerous Condition of Public Property*

In its first argument for summary judgment, the city asserted the divider did not create a substantial risk of injury because Montgomery's collision with the divider was "the only reported collision . . . in the last seven years." In the city's view, "Given the huge volume of traffic over that seven year period and the complete absence of any similar accidents, no reasonable person could conclude . . . that the center divider posed a substantial risk of injury to Plaintiffs."

There are several problems with this argument. First, on summary judgment we must strictly construe the city's affidavits. (*Miller v. Bechtel Corp., supra*, 33 Cal.3d at p. 874.) Viewed through the prism of strict construction, the city's evidence did not establish a "complete absence of any similar accidents" involving the divider in the previous seven years. Rather, what the city's evidence established was that someone acting on behalf of the city's claims administrator had searched a computerized database of claims submitted to the city for records of claims involving the center divider at J and 48th Streets but found none, other than the claims submitted by plaintiffs. The city offered no evidence, however, on how the database was created or maintained, or how the search of the database was conducted. Thus, there was no evidentiary basis for determining that the database constituted a complete and accurate record of claims submitted to the city, let alone for determining that the search the unidentified person conducted retrieved all of the pertinent records within the database.

Moreover, even assuming the city's evidence was sufficient to establish an absence of claims (other than plaintiffs') related to the divider at J and 48th Streets, a tort claim filed with the city is not the same thing as an accident, and an absence of claims is not the same thing as an absence of

accidents. It is possible other drivers collided with the divider, and suffered resulting injuries, but never thought to hold the city liable and therefore never filed a tort claim with the city. Thus, even if it had been provided, evidence the city never received any other claim relating to the divider would not have established a "complete absence of any similar accidents," as the city contends.

The city's argument on this point also suffers from another fatal flaw. It is true, as the city argues (and as the trial court apparently understood), that the absence of other similar accidents is "relevant to the determination of whether a condition is dangerous." (See, e.g., *Antenor v. City of Los Angeles* (1985) 174 Cal.App.3d 477, 482 [220 Cal.Rptr. 181] [inquiry into the question of dangerousness involves consideration of such matters as whether the condition has been the cause of other accidents]; *Sambrano v. City of San Diego* (2001) 94 Cal.App.4th 225, 243 [114 Cal.Rptr.2d 151] [evidence of the lack of prior accidents is relevant to the definition of a dangerous condition under § 830, subd. (a)].) But the city cites no authority for the proposition that the absence of other similar accidents is *dispositive* of whether a condition is dangerous, or that it compels a finding of nondangerousness absent other evidence.

In any event, as we have observed already, the city did not offer evidence sufficient to prove there had been no similar accidents involving the divider. What the city proved was that in an undefined search of a database of unknown reliability, its claims administrator found no record of any claim involving the divider other than plaintiffs'. To prevail on its motion for summary judgment on the ground that the divider did not constitute a dangerous condition, however, the city had to present evidence that would *preclude* a reasonable trier of fact from finding it was more likely than not that the divider posed a substantial risk of injury. (*Kahn v. East Side Union High School Dist., supra*, 31 Cal.4th at p. 1003.) Contrary to the trial court's conclusion, the city's evidence regarding the search of the database by its claims administrator was not sufficient to preclude a reasonable trier of fact from finding the divider posed a substantial risk of injury.

To the extent the city contends the divider did not pose a substantial risk of injury because it "may have saved [plaintiffs'] lives and the lives of other motorists," that argument fails as well. The city's evidence did not establish that Montgomery's car would have collided with another car in the eastbound lane if it had not struck the divider first, let alone that such a collision would have been more injurious than the collision with the divider. Indeed, the only evidence the city cites in its brief on this point—a purported transcript of

Montgomery's telephone call reporting the accident—was excluded from evidence by the trial court when the court sustained Montgomery's objection that the transcript was improperly authenticated and constituted inadmissible hearsay. Thus, on appeal, the city cites no admissible evidence of what would or even might have happened had the divider not been there.

Because the city's evidence was not sufficient to demonstrate as a matter of law that the divider did not constitute a dangerous condition of public property, the burden never shifted to plaintiffs to demonstrate a triable issue of material fact on this issue, and the trial court erred in concluding otherwise. However, because we review the trial court's ruling and not its rationale (*Aaitui v. Grande Properties* (1994) 29 Cal.App.4th 1369, 1373 [35 Cal.Rptr.2d 123]), this does not end our inquiry. Instead, we turn to the other two arguments the city offered in support of its summary judgment motion to determine if the trial court's ruling can be sustained on the basis of those arguments.

B

*Montgomery's Exercise of Due Care*

In its second argument for summary judgment, the city contended plaintiffs could not prevail on their claims "because [Montgomery] did not exercise any care, let alone due care, or act in a reasonably foreseeable manner when he swerved into the center median." Even assuming, however, that the evidence the city offered was sufficient to demonstrate, as a matter of law, that Montgomery was not using due care when his car struck the divider, that would not justify judgment in the city's favor. When a plaintiff seeks to recover for injury caused by a dangerous condition of public property, " 'The Tort Claims Act does not require [the] plaintiff to prove that the property was actually being used with due care at the time of the injury, either by himself or by a third party (e.g., driver of automobile in which plaintiff was riding as a passenger).' " (*Alexander v. State of California ex rel. Dept. of Transportation* (1984) 159 Cal.App.3d 890, 899 [205 Cal.Rptr. 758], italics omitted.) Thus, proof that Montgomery was not using due care is insufficient to show that plaintiffs cannot establish their claims in this case.

*Rodkey v. City of Escondido* (1937) 8 Cal.2d 685, 687 [67 P.2d 1053], is of no assistance to the city on this point because *Rodkey* did not involve a claim for a dangerous condition of public property under the "Tort Claims Act." Instead, *Rodkey* was decided on general negligence principles long before the enactment of the Tort Claims Act in 1963. (See *Bahten v. County of Merced*

(1976) 59 Cal.App.3d 101, 105 [130 Cal.Rptr. 539].) The court's conclusion in *Rodkey* that the driver's negligence had to be deemed the sole proximate cause of the injury to his passenger when he drove over a storm drain in excess of the posted speed limit simply has no bearing on whether proof that Montgomery failed to exercise due care would justify judgment in favor of the city on a claim for injury from a dangerous condition of public property under the Tort Claims Act. Thus, the summary judgment cannot be sustained based on the city's second argument.

## C

### *Causation*

In its final argument for summary judgment, the city asserted plaintiffs could not establish the requisite causal connection because "[t]he center divider did not cause Montgomery to swerve or move to the left." This argument, however, misapprehends the nature of the required causal connection. Under the governing statute, the pertinent question is not whether the divider caused Montgomery to swerve or move to the left; rather, the pertinent question is whether plaintiffs' "injury was proximately caused by the dangerous condition." (§ 835.)

There appears to be no dispute in this case that both plaintiffs suffered injuries as a result of Montgomery's car striking the concrete divider. At the very least, the city did not attempt to demonstrate otherwise. Based on the evidence the city offered, a reasonable trier of fact could have found that but for the presence of the divider, Montgomery might have been able to successfully evade the car encroaching from the No. 2 lane and continue his course westbound on J Street without any collision or injury. On these facts, the city failed to show that the plaintiffs could not establish a proximate causal connection between the divider and their injuries from the collision with the divider. Accordingly, the summary judgment cannot be sustained based on this argument either.

Because the city failed to produce sufficient evidence to demonstrate it was entitled to judgment as a matter of law on plaintiffs' claims for injury from a dangerous condition of public property, the trial court erred in granting the city's summary judgment motion.[4]

---

[4] No issue has been raised on this appeal regarding the trial court's summary adjudication of Lane's cause of action for negligence. Accordingly, our determination that the trial court erred in granting summary judgment does not affect that ruling.

## DISPOSITION

The judgment is reversed, and the trial court is directed to vacate its order granting the city's motion for summary judgment and enter a new order denying that motion. Plaintiffs shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

Blease, Acting P. J., and Raye, J., concurred.

A petition for a rehearing was denied April 16, 2010, and respondent's petition for review by the Supreme Court was denied June 23, 2010, S182399.