Filed 8/26/21  In re A.F. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re A.F. et al., Persons Coming Under the Juvenile Court Law. | |
| SONOMA COUNTY HUMAN SERVICES DEPARTMENT,<br><br>       Plaintiff and Respondent,<br><br>v.<br><br>I.F.,<br><br>       Defendant and Appellant. | A161597<br><br>(Sonoma County Super. Ct. Nos. DEP-6173-01 & DEP-6174-01) |

I.F. (father) appeals the juvenile court's findings and orders denying him reunification services pursuant to Welfare and Institutions Code[1] section 361.5, subdivisions (b)(12), (b)(13), and (e)(1).  Father addresses the juvenile court's ruling only on the basis of the section 361.5, subdivision (b) findings.  By failing to address the section 361.5, subdivision (e)(1) finding, he concedes its validity.  Because section 361.5, subdivision (e)(1) serves as an independent and alternative basis for the denial of reunification services, we affirm.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

1

# BACKGROUND

Father and S.L. (mother) have been in a relationship for over 20 years. They have two children together, A.F. I (born April 2016) and A.F. II (born May 2020). Father's criminal history includes three convictions for driving under the influence and multiple felony charges arising from a domestic abuse incident with mother in February 2020 (February incident).

## I.    February Incident Leading to Father's Arrest

When mother came home from work on February 21, 2020, father confronted her about socializing with another man at work. Mother was six months pregnant with A.F. II at the time. Father then began to berate mother and punch her in the face while she was sitting on the toilet. After mother fell to the floor, father then grabbed mother's hair and kneed her in the face numerous times. Father did not allow mother to leave the bathroom until the police intervened.

Officers noticed a puddle of blood near the toilet, which was completely uprooted from the floor. Mother displayed visible bruising and dried blood on her arms and face. Father's blows had pushed mother's false teeth back toward her throat, causing them to come loose from her gums. Father was clearly intoxicated, slurring his speech and emitting a strong odor of alcohol. A.F. I was in his room during the incident yet was aware of what happened.

Mother stated that this was the first domestic violence incident with father. Officers arrested father for domestic battery (Pen. Code, § 273.5, subd. (a)), false imprisonment

(Pen. Code, § 236), violation of probation (Pen. Code, § 1203.2), mayhem (Pen. Code, § 203), and battery causing great bodily harm (Pen. Code, § 243, subd. (d)). In May 2020, father entered a guilty plea to the felony domestic violence charge pursuant to Penal Code section 273.5, subdivision (a), and admitted the great bodily injury enhancement under Penal Code section 12022.7, subdivision (e). The court released defendant pending sentencing due to mother's expected childbirth, and the court permitted father to return home for 90 days on a Peaceful Contact Order.

Soon after father's release from jail and prior to his sentencing date, mother reported that father had again started to abuse her. Father had taken mother's disability checks and had restricted her access to her phone and the internet. Father had also stated that he "should have gone harder" on mother during the February incident. Father was arrested for violating his Peaceful Contact Order, and a criminal protective order was issued against him.

## II. Subsequent Proceedings

### A. *Section 300 Juvenile Dependency Petition*

On July 24, 2020, the Sonoma County Human Services Department (Department) filed a juvenile dependency petition under section 300, subdivisions (b)(1) (failure to protect), (c) (serious emotional damage), and (g) (no provision for support). The Department requested that the court assume jurisdiction over the children because of father's alcohol abuse, domestic violence against mother, and repeated incarceration. The

3

Department established a prima facie case, and the children were temporarily placed in a foster home on July 27, 2020.

## B. *Jurisdiction and Disposition Report*

In the jurisdiction and disposition report filed on August 18, 2020, the Department recommended that the juvenile court deny father reunification services pursuant to section 361.5, subdivisions (b)(12), (b)(13), and (e)(1).[2]

In an interview with a social worker on August 10, 2020, mother minimized father's abusive behavior leading to his second arrest. However, mother expressed that she had started taking co-parenting classes through the California Parenting Institute and that she "didn't want to deal with [father] anymore." Mother refused to believe that A.F. I wakes up talking about the February incident on a regular basis, stating, "That never happens. When he was with me[,] he slept through the night."

Father interviewed with a social worker while incarcerated. He denied the events leading to his second arrest but admitted responsibility for the February incident. Father could not understand how his actions caused A.F. I emotional distress given that his child did not directly witness the violence. Father believed he could provide for his children despite being incarcerated.

Another social worker reported that A.F. I had been displaying signs of severe trauma. A.F. I remembered the

---

[2] The Department recommended reunification services for mother. We discuss mother's testimony at the jurisdiction and disposition hearing only as relevant to father's appeal, but do not further discuss the dependency proceedings relating to mother.

4

February incident and mentioned that he watched his mother clean her own blood off the bathroom floor. A.F. I understood his father was in jail for abusing his mother and even notified the social worker that both parents had physically disciplined him in the past. The social worker reported that A.F. loves, but also fears, his father. A.F. I's foster parent shared that A.F. I would occasionally force himself to vomit by shoving his finger down his throat, a behavior he learned from his mother and grandmother.

The Department recommended that father be denied reunification services due to the severity of the February incident and his potential nine-year prison sentence. On October 1, 2020, the children transitioned into the care of their paternal grandparents in Mendocino County.

## C. *Jurisdiction and Disposition Hearing*

At the jurisdiction and disposition hearing on November 9, 2020, father testified that he had completed an anger management course while in custody, where he learned to express his negative emotions in a healthier manner. And after speaking with A.F. I over the phone, father finally realized that his actions during the February incident had had a traumatic effect on his son. Father acknowledged that he could be facing significant prison time.

Melissa Tice, a social worker assigned to this case, testified as to the children's well-being. Tice stated that A.F. I's condition had improved since he moved in with his paternal grandparents. A.F. I displayed healthy eating and sleeping routines, and he no longer had nightmares. A.F. II was also "doing really well."

5

However, A.F. I had patches of missing hair behind his ears, which his therapist attributed to anxiety and his response to emotional trauma. Tice shared that although mother had been seeking therapy, she continued to minimize father's abusive behavior.

Tice opined that it would not be in the children's best interest to provide father with reunification services considering the February incident, father's history of mental health challenges and substance abuse, and his potential nine-year sentence. Tice also believed the children received poor health care, not receiving follow-up medical and dental appointments, before the Department's involvement.

The court sustained the petition as to father and denied father reunification services under section 361.5, subdivisions (b)(12), (b)(13), and (e)(1).

## DISCUSSION

### I. Reunification Services under Section 361.5

"The goal of the juvenile dependency system is the preservation of the family, whenever possible." (*Raymond C. v. Superior Court* (1997) 55 Cal.App.4th 159, 163.) Accordingly, when a child is removed from his or her parent's custody, juvenile courts generally order that reunification services be provided to the parent. (*In re Gabriel K.* (2012) 203 Cal.App.4th 188, 194.) Reunification services are intended to "eliminate the conditions leading to loss of custody and to facilitate reunification of parent and child." (*Raymond C.*, at p. 163.) "Nevertheless, as evidenced by section 361.5, subdivision (b), the Legislature recognizes that

6

it may be fruitless to provide reunification services under certain circumstances." (*In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 478.) Subdivision (b) provides numerous "bypass" provisions under which "the general rule favoring reunification is replaced by a legislative assumption that offering services would be an unwise use of governmental resources." (*In re Baby Boy H.*, at p. 478; § 361.5, subd. (b).)

As relevant here, section 361.5, subdivision (b)(12) provides that reunification services need not be provided where the court finds, by clear and convincing evidence, "[t]hat the parent or guardian of the child has been convicted of a violent felony, as defined in subdivision (c) of Section 667.5 of the Penal Code." (§ 361.5, subd. (b)(12); *In re James C.* (2002) 104 Cal.App.4th 470, 485 (*James C.*).) Section 361.5, subdivision (b)(13) applies where the court finds, by clear and convincing evidence, that the parent "has a history of extensive, abusive, and chronic use of drugs or alcohol and has resisted prior court-ordered treatment for this problem during a three-year period immediately prior to the filing" of the dependency petition. (§ 361.5, subd. (b)(13).)

The finding of a bypass provision under section 361.5, subdivision (b) is not the end of the road for parents seeking reunification services, however. Section 361.5, subdivision (c)(2) enables a parent to obtain reunification services, notwithstanding the application of specified provisions under section 361.5, subdivision (b), if "the court finds, by clear and convincing evidence, that reunification is in the best interest of the child." (§ 361.5, subd. (c)(2).) "To determine whether reunification is in

7

the child's best interest, the court considers the parent's current efforts, fitness, and history; the seriousness of the problem that led to the dependency; the strength of the parent-child and caretaker-child bonds; and the child's need for stability and continuity." (*In re Allison J.* (2010) 190 Cal.App.4th 1106, 1116.)

Also relevant to this appeal is section 361.5, subdivision (e)(1), which similarly states that reunification services may be denied to an incarcerated parent where the trial court "determines, by clear and convincing evidence, those services would be detrimental to the child." (*James C.*, *supra*, 104 Cal.App.4th at p. 485.) "Detriment is determined by reference to: the child's age; the degree of bonding between the parent and the child; the length of the sentence; the nature of the crime; and the degree of detriment to the child in the absence of services." (*James C.*, at p. 485; § 361.5, subd. (e)(1).)

## II. Analysis

Here, the court bypassed father for reunification services under section 361.5, subdivision (b)(12) after father pled guilty to a charge of domestic battery (Pen. Code § 273.5, subd. (a)) arising from the February incident and under section 361.5, subdivision (b)(13) given father's "long history of arrests regarding drugs and alcohol." The court also denied reunification services to father under subdivision (e)(1) because he faced up to nine years in state prison and his history of domestic abuse indicated that reasonable reunification services would be detrimental to his children.

Father argues that, despite the section 361.5, subdivisions (b)(12) and (b)(13) findings, the trial court should have granted him reunification services pursuant to section 361.5, subdivision (c)(2) because sufficient evidence showed that reunification services were in the best interests of his children. (§ 361.5, subd. (c)(2).) Father does not address the denial of reunification services under section 361.5, subdivision (e)(1).

As an appellate court, we "review the trial court's ruling and not its rationale." (*Lane v. City of Sacramento* (2010) 183 Cal.App.4th 1337, 1347.) Thus, a trial court's judgment must stand "as long as any [] correct legal reason exists" to sustain it. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981 (*Rappleyea*).) Reversal is appropriate upon an affirmative showing of error, which requires the appellant to address each basis for a trial court's ruling. (*Case v. State Farm Mutual Automobile Ins. Co., Inc.* (2018) 30 Cal.App.5th 397, 401; *People v. JTH Tax, Inc.* (2013) 212 Cal.App.4th 1219, 1237 (*JTH Tax*).) So "[w]hen a trial court states multiple grounds for its ruling and appellant addresses only some of them, we need not address appellant's arguments because 'one good reason is sufficient to sustain the order from which the appeal was taken.' " (*JTH Tax,* at p. 1237.)

The findings under section 361.5, subdivisions (b) and (e) provide alternative and independent bases for the trial court's denial of reunification services. Reversal would be proper if father prevailed on his section 361.5, subdivision (c)(2) argument *and* successfully appealed the section 361.5, subdivision (e)(1) finding. But between his opening and reply briefs, father fails

9

even to mention the court's ruling with respect to subdivision (e)(1).  Father's "failure to address all bases for the court's ruling constitutes a waiver of [his] appellate claim."  (*JTH Tax, supra*, 212 Cal.App.4th at p. 1237.)  We therefore need not address father's argument under subdivision (c)(2) because his waiver of any appellate claim with respect to subdivision (e)(1) provides us with "one good reason," which is all that is necessary, to affirm the judgment.  (*JTH Tax*, at p. 1237; *Rappleyea, supra*, 8 Cal.4th at p. 981.)

## DISPOSITION

The judgment is affirmed.

BROWN, J.


WE CONCUR:

STREETER, ACTING P. J.
TUCHER, J.


*In re A.F. et al.* (A161597)